FILED
2010 Sep-16  AM 08:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH M. PLYLAR,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:09-CV-1448-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner**<br>**of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Elizabeth M. Plylar brings this action pursuant to Sections 205(g) and 1613(c)(3) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  *See* 42 U.S.C. §§ 405(g), 1383(c).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Statement of Facts

Plaintiff filed her applications for disability, DIB, and SSI under Titles II and XVI of the Act on May 1, 2007.  (Tr. 200).  Plaintiff's applications were denied initially on July 27, 2007.  (Tr. 35-36, 52-56).  On August 29, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 57).  A hearing was held before ALJ Dan Grady on December 18, 2008. (Tr. 59, 583). In his February 24, 2009 decision, the ALJ determined that Plaintiff had met the insured status requirements of the Act through March 31, 2007.  (Tr. 18).  The ALJ further determined that Plaintiff has not engaged in substantial gainful activity since December 4, 2006, the alleged onset date of disability.  (*Id*.).

The ALJ found that Plaintiff suffers from the following severe combination of impairments: chronic obstructive pulmonary disorder ("COPD"); congestive heart failure ("CHF"); status post fracture of C2 with right radiculopathy; hypertension; and sinusitis. (*Id.*). However, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20). Although the ALJ concluded that Plaintiff is unable to perform any past relevant work, he also found that Plaintiff had acquired work skills from her previous jobs that are transferable to other occupations in which jobs exist in significant numbers in the national economy. The ALJ further determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, mostly seated-only type work, with occasional climbing of stairs, ropes, ladders, scaffolding, and occasional stooping, kneeling, crouching, crawling, balancing, walking, and standing. (Tr. 20-23).

The ALJ ultimately found that Plaintiff was not disabled as defined under the Act. (Tr. 24). Plaintiff requested a review of the ALJ's decision on March 12, 2009. (Tr. 553-54). The Appeals Council denied Plaintiff's request for review on June 4, 2009. (Tr. 7-10). On July 20, 2009, Plaintiff filed a complaint in this court requesting judicial review of the ALJ's decision. (Pl. Br. at 2).

## II.   Procedural History

Plaintiff was born on December 4, 1951. (Tr. 200). Plaintiff obtained a Bachelor's degree in psychology and a Master's degree in public health and counseling. (Tr. 211, 587). Plaintiff's previous work experience includes employment as a vocational rehabilitation counselor, case manager, day care assistant director, and tutor. (Tr. 206, 230). Plaintiff's complaints regarding her physical and mental health and the alleged causes of her inability to work include chronic obstructive pulmonary disease ("COPD"), arthritis, gum disease, brain damage caused from injuries sustained

in an automobile accident in 1991 affecting her memory and causing depression, shortness of breath, pain when standing, and problems with her heart.  (Tr. 205).  In a Daily Activities Questionnaire that Plaintiff completed on June 26, 2007, Plaintiff stated she is able to care for her personal needs and does not require assistance in doing so, but does receive assistance from her daughter with shopping and preparing meals.  (Tr. 213-14).  Plaintiff is prescribed 190 mg of methadone per day for pain management.  (Tr. 227).

On May 10, 2006, Dr. Prem Gulati conducted a disability physical on Plaintiff at the Sparkman Medical Clinic.  (Tr. 342-45).  Plaintiff's chief complaints were noted as neck pain since 1991, and shortness of breath for two years.  (Tr. 342).  Dr. Gulati determined that Plaintiff had cervical radicular pain with some weakness on the right side, history of a fractured skull, COPD secondary to smoking, and a C2 fracture that was well-healed; he also extrapolated that she might have degenerative joint disease of the neck.  (*Id.*).  Dr. Gulati opined that Plaintiff may be unable to engage in long periods of sitting, or perform lifting or carrying types of jobs, but should be able to do office-type work without much difficulty.  (*Id.*).

On May 11, 2006, Dr. Erin M. Smith conducted a psychological evaluation of Plaintiff at the Assessment and Psychotherapy Services of Madison.  (Tr. 346-49).  Plaintiff presented with a lengthy history of medical complaints, physical symptoms, and symptoms related to depression.  (Tr. 346).  Plaintiff reported that she had not been seen by a doctor for her complaints and symptoms because she could not afford to go.  (*Id.*).  Dr. Smith noted that because Plaintiff had not seen a doctor, he did not know what her diagnoses or medical prognosis might be.  (*Id.*).  He did opine, however, that Plaintiff's overall level of social and adaptive functioning appears to be moderately impaired, likely secondary to her ongoing medical issues and she has been able to function at an age-

3

appropriate level in the past. He found her ability to maintain gainful full-time employment currently limited by her ongoing medical conditions for which she has been unable to seek treatment. Because he believed it unlikely that these conditions would remit without adequate treatment, Dr. Smith also found it unlikely that Plaintiff would be able to function in a full-time employment setting until such time as her medical issues had been effectively treated. Dr. Smith further found that Plaintiff would probably require assistance in meeting her daily living and medical needs, but that her ability to manage any funds that she may receive appeared to be adequate. (Tr. 348). Dr. Smith's diagnostic impression of Plaintiff was moderate recurrent Major Depressive Disorder ("MDD"), interstitial cystitis, C2 fracture, chronic pain syndrome. Additionally, he found Plaintiff had moderate limitations with regard to employment, financial, medical, social, and interpersonal relationships, and assigned Plaintiff a GAF score of 45.[1] (Tr. 349). Dr. Smith recommended mental health services for Plaintiff. (*Id.*).

On May 26, 2006, Robert Estock performed a psychiatric review of Plaintiff, determined that her medical impairments were not severe, and diagnosed her with moderate recurrent MDD. (Tr. 350-63). Estock determined that Plaintiff's ability to maintain gainful employment is limited by her medical conditions, and that she may not be able to engage in full time employment until her medical issues have been treated. (Tr. 362).

On June 1, 2006, medical consultant Ann Anderson performed an RFC assessment on Plaintiff. (Tr. 364-71). Anderson found no evidence of COPD or shortness of breath. (Tr. 366). Anderson determined that Plaintiff can occasionally lift and/or carry 20 pounds; frequently lift and/or

---

[1]The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM-IV 34 (4th ed., text revision 2000) states that a GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning.

carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. Anderson further determined that Plaintiff was limited in pushing and/or pulling in her upper extremities, as well as reaching in all directions, but was unlimited in handling, fingering, and feeling. She found Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds. (*Id.*). Anderson also determined Plaintiff had no visual, communicative, or environmental limitations, but that she should avoid all exposure to hazardous machinery or heights. (*Id.*). Anderson found that Dr. Gulati's diagnoses of Plaintiff were general and not supported by her own evaluations of Plaintiff's gait, strength, or range of motion. (Tr. 370).

Plaintiff was admitted to the emergency room in November 2006 with complaints of shortness of breath, COPD, and flu-like aches. (Tr. 388-97). Plaintiff was diagnosed with bronchitis, but tested negative for pneumonia. (Tr. 391, 397). Plaintiff was discharged with instructions to see a medical doctor. (Tr. 396).

In June 2007, neuropsychologist Dr. Carol Walker at NeuroLife in Huntsville, Alabama examined Plaintiff and determined that Plaintiff's medical records did not corroborate her subjective complaints of skull or vertebral fractures. (Tr. 430-34). Dr. Walker also determined that Plaintiff's mental impairment was mild to moderate, and that her prognosis would be fair with mild treatment. (Tr. 433).

In July 2007, Dr. John Lary examined Plaintiff and issued an accompanying medical report diagnosing Plaintiff with COPD (extent unknown), possible lumbar sensory radiculopathy (otherwise normal neurological findings), degenerative arthritis, restricted shoulder motion, Hepatitis B (by patient history), depression, obesity, periodontal disease, and noted old back and head injuries. (Tr.

420-24).  Also in July 2007, Dr. Eugene E. Fleece conducted a psychiatric review of Plaintiff.  (Tr. 441-54).  Dr. Fleece found Plaintiff to have a mild degree of limitation as to her restriction of activities of daily living, difficulties in maintaining social function, and difficulties in maintaining concentration, persistence or pace. (Tr. 451).  He found Plaintiff had no episodes of decompensation of extended duration.  (*Id*.).  Dr. Fleece determined Plaintiff's claim of depression was only partially credible and her claim of brain damage not credible.  (Tr. 453).

Additionally, in July 2007, Dr. Gordon Mitchell performed an RFC assessment on Plaintiff where she alleged having COPD, arthritis in all joints, gum disease, and a neck fracture.  (Tr. 456).  Dr. Mitchell determined that Plaintiff's complaints as to the severity of her symptoms and the alleged effect on her functioning were inconsistent with his own findings, and therefore not credible.  He found Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and was unlimited in pushing/pulling.  (*Id*.).  He further found Plaintiff had no limitations with regard to balancing, stooping, kneeling, or crouching, but had occasionally limits with regard to climbing ramps, stairs, and crawling, but should never climb ladders, ropes, or scaffolds.  (Tr. 457).  Additionally, tests conducted in the RFC assessment did not reveal a pulmonary disease.  (Tr. 460).

In February 2008, Dr. Yelda Parekha treated Plaintiff at Huntsville Hospital when she was admitted for COPD exacerbation.  (Tr. 463-91).  Plaintiff was released with a diagnosis of COPD, hypertension, sinusitis, and mucositis.  (*Id.*)  She was also advised to quit smoking.  (*Id.*)  She was asked to follow up with the community free clinic, and also advised to use her home oxygen and not to smoke around the oxygen.  (*Id.*).  On discharge, Plaintiff was stable and her lungs were clear.  (*Id.*)

In June 2008, Dr. Daniel Burns treated Plaintiff at Huntsville Hospital for COPD and cellulitis. (Tr. 498-500). Plaintiff was admitted and treated with various medications. By day two of Plaintiff's hospital stay, her lower extremity edema and cellulitis had markedly improved and she was no longer complaining of pain. (*Id.*) Plaintiff was released and prescribed Medrol Dosepak, Levaquin, Bactrim, and Lisinopril to treat her symptoms. (Tr. 499).

In August 2008, Plaintiff underwent another RFC assessment in which she alleged COPD, arthritis, brain damage with memory loss, depression, and heart problems. (Tr. 518-24). The medical consultant conducting the RFC assessment found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and had no limitations with regard to pushing and/or pulling. (Tr. 519). It was further determined that Plaintiff was: occasionally limited in balancing, stooping, and climbing ramps and stairs; frequently limited in kneeling, crouching, and crawling; and should never climb ladders, ropes, or scaffolds. (Tr. 520). The consultant determined that Plaintiff's allegations were credible and substantiated by the medical evidence, as well as non-medical evidence. (Tr. 520).

In January 2009, Dr. Bryan Wells treated Plaintiff for COPD, hypertension, history of congestive heart failure, hepatitis C, and arthritis at Huntsville Hospital.[2] (Tr. 561-63). On the date of her discharge, Plaintiff was released in stable condition and given instructions to (1) refrain from

---

[2]This medical record was submitted after the record was closed, but Plaintiff re-submitted this record to the Appeals Council, at which point the Appeals Council made this additional record part of the official record. (Pl. Br. at 8; *see also* Tr. 6).

smoking, (2) have a follow-up CT of her chest in one to two months for lumphadenopathy, and (3) use home oxygen therapy.[3]  (Tr. 562).

## II.    ALJ Decision

Determination of disability under the Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether the claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work.  The claimant's RFC consists of what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past

---

[3] This advice, stop smoking and use home oxygen therapy, was the same given to Plaintiff after her treatment for COPD exacerbation at Huntsville Hospital in February 2008.  (Tr. 463-91).

8

employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff met the status requirements of the Act through March 31, 2007. (Tr. 18). He also found that Plaintiff has not engaged in substantial gainful employment since December 4, 2006, her alleged onset date of disability. (*Id.*). After reviewing Plaintiff's medical records, the ALJ determined that she suffers from COPD, congestive heart failure, status post fracture of the C2 with right radiculopathy, hypertension, and sinutitis. (*Id.*). The ALJ further determined that Plaintiff does not allege, nor does the medical record support, a finding that any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 is met. (Tr. 20).

At the hearing, the ALJ considered the testimony of vocational expert ("VE") Barbara Azzam who classified Plaintiff's past work as skilled and sedentary. (Tr. 586). The VE determined that Plaintiff should be able to perform sedentary work and that there are a significant number of these jobs existing nationally. (Tr. 594-95). The ALJ determined that Plaintiff's statements concerning intensity, persistence, and limiting effects of her alleged symptoms are not fully credible, because they are inconsistent with her RFC findings. (Tr. 22). Additionally, the ALJ determined that the ability to perform the daily activities Plaintiff described is inconsistent with her alleged complaints and consistent with her RFC findings. (*Id.*). Based on the testimony of the VE and consideration of the record, the ALJ determined that Plaintiff's ability to work is limited, and although she is unable to perform any past relevant work, she has the ability to perform work at a sedentary level. (Tr. 22-23). Based on his findings, the ALJ concluded that Plaintiff has not been under a disability at any time through the date of his decision. (Tr. 24).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed with benefits awarded.  (Pl. Br. at 11).  In the alternative, Plaintiff asks for a "Sixth Sentence" remand for a full and fair consideration of all medical records.  (*Id.*).  Plaintiff asserts that substantial evidence does not support the ALJ's decision denying her disability benefits, and improper legal standards were applied.  (Pl. Br. at 4).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be

10

affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and that the proper legal standards were applied.

### A.   Substantial Evidence Supports the ALJ's Decision That Plaintiff Has Not Been Under a Disability Through the Date of His Decision.

#### 1.   The ALJ Considered all Relevant Evidence Relating to Plaintiff's COPD.

Plaintiff maintains that the ALJ failed to consider her January 2009 medical records which discharged her from the hospital on home oxygen therapy. (Pl. Br. at 7). Specifically, Plaintiff contends that the limitations resulting from the home oxygen requirement significantly decrease her ability to perform sedentary work. (*Id.*). Under Sentence Six, a district court may remand a case to the Commissioner to consider previously unavailable evidence; however, it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals Council. *See* 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). There also must be "a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Commissioner for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Falge v. Apfel*, 150 F.3d 1320, 1323).

11

The hospital records Plaintiff refers to were not a part of the administrative record when the ALJ rendered his decision.  Prior to adjournment of the December 18, 2008 hearing, the ALJ gave Plaintiff ten days to present additional evidence.  (Tr. 599).  Plaintiff submitted the medical records from her January 11, 2009 hospitalization on January 21, 2009 – outside the time frame allowed.[4] (Tr. 560).

To qualify for benefits, a claimant must prove she was disabled on or before the date she was last insured, and if the claimant becomes disabled after this period, her claim must be denied.  *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).  If Plaintiff maintains that the January 2009 hospital visit requiring home oxygen therapy was the juncture at which her disability became so severe that it diminished her ability to work, then her claim must be denied.  In this scenario, the disabling condition occurred after the date she was last insured, which was March 31, 2007.  Alternatively, if Plaintiff contends that the January 2009 diagnosis was not the solitary cause of disability, but instead a significant contributing factor which the ALJ erred in failing to consider, then this argument also lacks merit.

Although the ALJ has the duty to develop the record fully and fairly, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997).  When the record as a whole is sufficient to allow the ALJ to evaluate a claimant's impairments and functional ability, the evidentiary gaps required to demonstrate prejudice do not exist. *Id.* at 1423.  In this case, Plaintiff was not prejudiced

---

[4] Notably, the alleged hospital visit occurred not only after the hearing before the ALJ, but also after the deadline to submit the records.

by the ALJ's failure to consider the January 2009 records, because the Commissioner, through the Appeals Council, ultimately considered those documents in evaluating whether Plaintiff was entitled to benefits.  (Tr. 7-8).  Even if the ALJ did not consider the evidence, it was considered by the Appeal Council.  The Appeals Council "denied review because, even in the light of [the new evidence, it] found no error in the opinion of the [ALJ]."  *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).  The Appeals Council stated it had considered those documents, but found that the records did not provide a basis for changing the ALJ's decision. Therefore, Plaintiff's argument that the ALJ's decision should be reversed because he failed to consider these records is without merit.[5]

Additionally, Plaintiff does not challenge the Appeal Council's decision to decline review on that basis, and thus, has waived the argument in this appeal.  *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1279-80 (11th Cir. 2009) (holding that the appellant abandoned issue not raised in opening brief.).  Therefore, Plaintiff's argument that the ALJ did not have substantial evidence to support his decision is without merit.

## 2.     The ALJ Gave Proper Weight to Plaintiff's Psychological Evaluations.

Plaintiff contends that the ALJ did not give either of the psychological examiner's opinions any weight and that failing to do so constitutes error.  (Pl. Br. at 9).

When the ALJ determines that certain physicians' opinions should be given less weight than others, that decision is supported by substantial evidence so long as the ALJ can articulate valid

---

[5] Even if neither the ALJ, nor the Appeals Council had considered these records, there is no prejudice because the advice given, stop smoking and use home oxygen therapy, had already been given to Plaintiff in February 2008.  Moreover, it is possible that, had she heeded this advice, her January 2009 hospitalization may have been unnecessary.

reasons for giving less weight to those opinions. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Additionally, the opinion of a physician may be discounted when the opinion is not well-supported by medically acceptable techniques, or if it is inconsistent with the record as a whole. *See id.* at 1240-41.

In the ALJ's decision, he explained that his determination to give less weight to the opinions of Dr. Smith and Dr. Walker, the psychological examiners, was based on the fact that "the claimant gave no testimony regarding an ongoing mental problem and did not claim any limitations of work based on mental limitations." (Tr. 22). Plaintiff contends that in a daily activities questionnaire completed in 2007, she noted memory problems and stated, "I stay depressed because of my condition[.] I hope that going to a doctor will help me feel better, both mentaly [sic] and physical [sic]." (Tr. 217). In a Social Security function report completed July 29, 2008, when Plaintiff was asked if she had noticed any unusual behaviors or fears, she replied that she was "more depressed than ever." (Tr. 256). However, the majority of Plaintiff's medical records address only her physical complaints. Her concerns regarding depression appear sporadically throughout the record, and one physician even questioned the legitimacy of her reported depression. (*See* Tr. 453). The ALJ refers to Dr. Smith's opinion that Plaintiff's condition was likely to improve with adequate treatment, although the record shows Plaintiff failed to follow-up on recommendations made by treating doctors. (Tr. 22). A review of the record demonstrates that the ALJ gave an appropriate amount of weight to the opinions of the two psychological examiners in reaching his decision. Therefore, the ALJ's decision was supported by substantial evidence, and Plaintiff's argument is without merit.

3.   **The ALJ Gave Proper Weight to the Opinions and Conclusions of Dr. Gulati.**

Plaintiff contends that the ALJ disregarded the opinion of treating physician Dr. Gulati.  (Pl. Br. at 10-11).  Specifically, Plaintiff argues that the ALJ's conclusion that Plaintiff is limited to a sedentary level of physical exertion is in opposition to Dr. Gulati's medical opinion that Plaintiff would have trouble with jobs that required her to sit for long periods of time.  (*Id.*).

In determining disability, the ALJ must give substantial weight to the opinion of the treating physician, unless "good cause" is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

Plaintiff's argument fails to address that portion of Dr. Gulati's opinion indicating his belief that Plaintiff could do office type work without much difficulty.  (Tr. 345).  In his decision, the ALJ not only took Dr. Gulati's opinion into consideration, but he also stated that he accorded Dr. Gulati's opinion great weight in rendering his decision.  (Tr. 22).  The ALJ found Dr. Gulati's opinion was based on a thorough examination of Plaintiff and is consistent with the medical evidence of record.  It is clear from the ALJ's decision that he gave substantial weight to the opinion of Dr. Gulati.  This court, therefore, finds that Plaintiff's argument is without merit.

## VI.   Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____15th_____ day of September, 2010

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE